UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BOBBIE SELLERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:04-CV-478-TS |
| | ) | |
| ALLEN COUNTY CHILD SUPPORT | ) | |
| DIVISION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Judgment on the Pleadings [DE 61], filed by the remaining Defendants, The Allen County Board of Commissioners and Allen County ("County Defendants"),[1] on May 25, 2005.

## BACKGROUND

The Court provided a detailed account of pro se Plaintiff Bobbie Sellers' allegations in its May 13, 2005, Order granting the State Defendants' Motion to Dismiss. In brief, this lawsuit is based on a series of events set into motion when the Plaintiff was denied a United States Passport on February 5, 2003. The New Orleans Passport Agency told the Plaintiff that he was refused a

---

[1] The Defendant has named two Defendants that were not dismissed in the Court's May 13, 2005, Order granting the State Defendants' Motion to Dismiss. They are listed on his Complaint as the "Allen County Board of Commissioners" and "Allen County of." Attorney Laura L. Maser, who represents the remaining Defendants, has stated in recent submissions that they are actually the same legal entity: "The appropriate designation for the Defendants named by Plaintiff as 'Allen County (County of Allen) Indiana' and 'Allen County Board of the Commissioners' is the Board of Commissioners of the County of Allen, pursuant to I.C. 36-2-2-2." For the sake of consistency, however, the Court will continue to refer to the remaining Defendant as the "County Defendants."

passport because he owed child support arrearages in an amount greater than $5,000.[2]

Upset because he was unable to make his intended trip to Nigeria, and convinced that he had been discriminated against on the basis of his race,[3] the Plaintiff filed complaints with the Indiana Civil Rights Commission, Indiana State courts, and this Court. The Plaintiff filed his federal lawsuit under 42 U.S.C. § 1983 on December 20, 2004.

The Plaintiff's Complaint named the following agencies of the State of Indiana as Defendants: the ICRC, the ICRC Board of the Commissioners, the ICRC Board of the Appeal Commissioners, the Indiana State of Family and Social Services Division of Family Children, and the Allen County Child Support Division. Additionally, the Plaintiff named the following people as Defendants, both in their individual and official capacities: Karen Richards (Allen County Prosecutor), Sandra Leek (Executive Director of the ICRC), Alpha Blackburn (ICRC Chairperson), David Carter (ICRC Commissioner), Marco Deckard (ICRC intake person, screening analyst, and investigator), and Judge William Fee (Steuben County Superior Court).

These State Defendants together filed a Motion to Dismiss, which the Court granted on May 13, 2005. Subsequently, the remaining defendants, the County Defendants, filed a Motion for Judgment on the Pleadings on May 25, 2005. The Plaintiff filed his Response on June 7, 2005, and

---

[2] 42 U.S.C. § 652(k), entitled "Secretarial responsibility," reads:
(1)  If the Secretary receives a certification by a State agency . . . that an individual owes arrearages of child support in an amount exceeding $5,000, the Secretary shall transmit such certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2).
(2)  The Secretary of State shall, upon certification by the Secretary transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual.
(3)  The Secretary and the Secretary of State shall not be liable to an individual for any action with respect to a certification by a State agency under this section.

*See also* 22 C.F.R. §§ 51.70(a)(8) & 51.80.

[3] The Plaintiff repeatedly describes himself as being "of the color of black."

the County Defendants filed their Reply on June 20, 2005.

### MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

The Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. A court reviews Rule 12(c) motions under the same standard as a motion to dismiss under Rule 12(b). *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Like Rule 12(b) motions, courts grant Rule 12(c) motions only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* However, if matters outside the pleadings are presented to the court and not excluded, the court should review the Rule 12(c) motion as one for summary judgment. *See* Fed. R. Civ. P. 12(c), *Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

In this case, along with what the Court has construed as the Plaintiff's Response to the County Defendants' Rule 12(c) Motion, the Plaintiff has submitted Exhibits A–Y and an additional document which he presents as an affidavit. The County Defendants argue in a motion filed June 20, 2005, that the Court should strike the Plaintiff's Affidavit and Exhibits. The Defendants recognize that if the Court does not strike these submissions, its Rule 12(c) Motion should be reviewed under the motion for summary judgment standard.

The Plaintiff's "Affidavit" is flawed: it resembles a brief rather than an affidavit, as it contains legal arguments instead of asserting matters to which he has personal knowledge. Additionally, nowhere does the Plaintiff swear under the penalty of perjury that the matters asserted in his Affidavit are true to the best of his ability. As to the Exhibits, it is unclear what relevance most have to his case against any of the Defendants, let alone the remaining County Defendants.

However, in an effort to assure the Plaintiff that the Court has fully heard and considered his allegations, the Court will take these submissions into account in ruling on the County Defendants' Motion. In doing so, the Court makes no determination as to whether any of these documents would be admissible at trial. Because the Court will consider matters outside the pleadings, the Court reviews the County Defendants' Motion for Judgment on the Pleadings under the familiar summary judgment standard.

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed.

R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

> Local Rule 56.1 sets forth the non-moving party's responsibility with greater specificity:
>
> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D. Ind. L.R. 56.1(b). Thus, to the extent a non-moving party fails to object to the moving party's statement of material facts, this Court will construe the non-moving party's silence as admissions and take the uncontested facts from the movant's brief as admitted to exist without controversy. *See Bradley v. Work*, 154 F.3d 704, 707–08 (7th Cir. 1998) (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994) (collecting cases where we have "repeatedly upheld the strict enforcement" of Local Rule 56.1); *Kunik v. Racine County*, 106 F.3d 168, 174 (7th Cir.1997); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight

of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**FACTS**

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, the facts assumed to be true for purposes of ruling on the Defendant's Motion for Summary Judgment are as follows.

The facts in this case remain the same as determined in the Court's May 13, 2005, Order granting the State Defendants' Motion to Dismiss. However, the Court now amends those facts in light of additional documentary evidence submitted by the Plaintiff since that Order. This evidence helps explain the tangle which led to his being denied a passport and the ensuing lawsuits.

Two documents submitted by the Plaintiff make clear that by the end of 2002, he no longer owed more than $5000 in child support arrearage. The first, a May 13, 2002, letter from the Office of the Prosecuting Attorney of Allen County, states that according to the Allen County Child Support Division's records, Sellers owed $16,378.00 in child support arrearage. (Exhibit H, DE 68-2 at 19.) The second, an October 4, 2002, Order from the Allen Superior Court, determined that due to a "substantial and continuing change in circumstances," as of August 31, 2002, Sellers only owed a support arrearage of $525. (Exhibit R, DE 68-3 at 20.)

As the Court has noted earlier, months later, on February 5, 2003, the New Orleans Passport Agency denied the Plaintiff a passport because, according to its records, he owed child support arrearages in an amount greater than $5,000. The Plaintiff was scheduled to leave for Nigeria on February 18 and to return to the United States on March 11, 2003. Because the Plaintiff was unable

to get a passport in time, he was not able to use his ticket.

The most helpful of the Plaintiff's recent submissions is a letter from the Allen County Prosecuting Attorney's Office, dated February 12, 2004, to the Indiana State Civil Rights Commission. This letter gives the single most comprehensive account of the events surrounding the Plaintiff's futile effort to secure a passport. It reads:

> Mr. Sellers had accumulated a significant arrearage, in excess of $15,000, during the course of his child support case. Apparently, Mr. Sellers also had a disability and was ultimately awarded social security disability benefits. [The Allen Superior Court, Family Relations Division,] eventually ordered that the disability payments, payable to Mr. Sellers' dependant child, would be in lieu of child support. Apparently there was also a back award for the child support arrearage that brought his arrearage down to $525.00. In the fall of 2002, this information was entered into the Indiana Support Enforcement and Tracking System (ISETS).
> However, pursuant to federal legislation . . . restrictions were placed on the issuance or renewal of passports for the failure to pay child support. If an individual owed more than $5,000.00 in back support they would not be eligible for a renewal or issuance of a passport. In Mr. Sellers' case, even though his arrearage had been brought below $5,000.00, his name was not removed from the passport list, simply because the amount of arrearage was less than $5,000.00 but more than zero. In essence, if the arrearage is not reduced to zero, the name is not removed from the passport list, unless some affirmative action is taken by the child support agency. Mr. Sellers apparently applied for a passport in January of 2003 and had made plane reservations for February of 2003. He did pay off the remaining $525.00 of his arrearage in January, and we were able to assist him once we knew he was applying for a passport to get him removed from the passport list and to expedite the issuance of his passport. Had we been informed that he was planning on applying for a passport earlier, we would have assisted him at that time. . . .
> While Mr. Sellers was seemingly caught up in a bit of governmental red tape, there was certainly no intent to discriminate against him on any basis, done by anyone in the child support operations at the Local level, the State level, or the Federal level. Hopefully this letter will explain the circumstances affecting Mr. Sellers and will enable you to complete your investigation.

(Exhibit U, DE 68-3 at 23–24.)

Given this new information, it now appears that the Plaintiff has been correct in asserting that his application for a passport was improperly denied. When he applied for a passport in January 2003, he owed only $525 in child support, and by the end of the month he had wiped the slate clean

7

by paying this remaining amount.

The Court now turns to the facts alleged by the Plaintiff against the County Defendants. The Plaintiff claims that the County Defendants are jointly liable for the wrongs he has alleged the Allen County Child Support Division committed against him. The Plaintiff claims that:

> . . . the Allen county board of the commissioners, and Allen county commissioners office, and Allen county prosecutor Karen Richards and the Karen Richards in person are jointly responsible for the plaintiff residence of the Allen county Indiana, damages with took place in Allen county (county of Allen) territorial, while the plaintiff's was dealing with his child support payments through the Allen county child support division, which were operated also with the office of the Allen county prosecutor office Karen Richards, and I plaintiff believe that the prosecutor Karen Richards, become personally with the plaintiff and the Allen county board of the commissioners, and the commissioners become personal and all together with abuse of their official capacity, as a prosecutor and commissioners jointly took advantage of the plaintiff of this case with the color of black . . .

(Plaintiff's Complaint, pp. 10–11).

### DISCUSSION

Exhibits submitted by the Plaintiff in response to the County Defendants' Motion for Judgment on the Pleadings corroborate his complaints that he should not have been denied a passport in early 2003. However, this new revelation does not give the Court any reason to reconsider its Order granting in full the State Defendants' Motion to Dismiss for the simple reason that the Court had already assumed that his allegations were correct. The Court found that all State Defendants except Marco Deckard were entitled to immunity from the Plaintiff's allegations. The Court also granted the Motion to Dismiss as to Marco Deckard because the facts alleged by the Plaintiff did not describe any civil rights violations.

The same holds for the Plaintiff's case against the County Defendants. The Plaintiff has not alleged any facts which implicate either of the County Defendants directly in his problems obtaining

a passport, straightening out his child support problems, or in his legal proceedings. Rather, it appears that the Plaintiff believes that the County Defendants are liable for the actions of the Allen County Child Support Division and the Allen County Prosecutor. The Plaintiff's case against the County Defendants therefore hinges on the issue of whether the County Defendants are legally responsible for the actions of the Allen County Prosecutor and the Allen County Child Support Division.

Briefs from the State Defendants and the County Defendants have shown that the County Defendants are not responsible for the actions of the Allen County Prosecutor and the Allen County Child Support Division. *See*, *e.g.*, State Defendants' Memorandum in Support of Motion to Dismiss at 5, County Defendants' Memorandum in Support of Motion for Judgment on the Pleadings at 3–5. The Plaintiff has not addressed, let alone countered, these citations and the general proposition that the County Defendants are not liable for the complaints lodged in his Complaint.

Because the Plaintiff has not alleged any facts regarding the County Defendants' actions, and the County Defendants have shown that they are not legally responsible for any of the State Defendants' actions, the Court finds that the County Defendants are entitled to summary judgment. Accordingly, the Court grants in full the County Defendants' Motion for Judgment on the Pleadings.

**PLAINTIFF'S REQUEST FOR SANCTIONS AGAINST LAURA MASER**

The Court now turns to the Plaintiff's latest allegations against legal counsel for the County Defendants, Attorney Laura Maser. The Court's May 11, 2005, denied the Plaintiff's attempt to amend his complaint to add Attorney Maser and her lawfirm as defendants. The Court now addresses the Plaintiff's request for sanctions against Attorney Maser.

The Plaintiff requests sanctions against Attorney Maser on the grounds that she intentionally

9

sent copies of submissions to an incorrect address with the intent to delay the Plaintiff's receipt of them so he could not get his responses together in time. Exhibits A and B, submitted on June 7, 2005, in response to the present Motion by the County Defendants, are copies of the last pages of two documents prepared by Attorney Maser. Both contain a Certificate of Service certifying that Attorney Maser had mailed that document to the Plaintiff. Both Exhibits bear the typed address of 5221 Reed Street, Fort Wayne, Indiana 46806-3201. On both, this address has been struck out and another street address has been written in, 535 East Lewis Street, with a new zip code of 46802.

Attorney Maser responds to the Plaintiff's allegations and Exhibits A and B in the County Defendants' Reply to their Motion for Judgment on the Pleadings. She explains,

> The undersigned did, in fact, mail the Motion and corresponding Memorandum to 535 East Lewis Street instead of 5221 Reed Street. The reason for this was not, however, to trick Mr. Sellers or to obstruct his right to respond, rather it was just the opposite. Just before placing the Motion in the mail to Mr. Sellers on May 25, 2005, the undersigned realized that the address on the certificate of service (the Reed Street address) and the address on each of Mr. Sellers' most recent filings (the East Lewis address) were not the same. The undersigned recalled that Mr. Sellers had changed addresses during the pendency of this matter and mistakenly presumed the address listed by Mr. Sellers on the last page of each of his very recent filings must be the correct address. The undersigned, therefore, changed the address on the certificate of service and mailed the documents to 535 East Lewis Street. The undersigned perhaps erred in not checking the entire file to verify which was the correct address, but this error was not intended to harm the Plaintiff, and, in fact, did not harm [him], as he did timely file a response. The undersigned simply did not comprehend that Mr. Sellers would continue to place the wrong address at the end of each of the pleadings and was actually trying to ensure that he would receive the documents without delay. The undersigned apologizes to Mr. Sellers and the Court for this oversight and mistake.

Reply at 6–7.

The Plaintiff has not countered Attorney Maser's account of these events and the Court has no reason to doubt Attorney Maser's good faith. Accordingly, the Court finds that the Plaintiff's request for sanctions is improper.

## CONCLUSION

For the reasons cited, the Court finds that the submissions from the Parties do not show that there is any genuine issue as to any material fact and that County Defendants are entitled to judgment as a matter of law. Accordingly, the Court GRANTS the County Defendants' Motion for Judgment on the Pleadings [DE 61]. JUDGMENT is ENTERED in favor of the Defendants and against the Plaintiff, Bobbie Sellers.

SO ORDERED on June 29, 2005.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT